498 So.2d 1100 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Marvin Craig WHITE, Defendant-Appellant.
No. CR 85-1199.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
*1101 Julie E. Cullen, Opelousas, for defendant-appellant.
Donald Richard, Asst. Dist. Atty., Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, FORET and STOKER, JJ.
STOKER, Judge.
The defendant appeals his conviction of and 99-year sentence for armed robbery.
On July 30, 1982 the Louisiana Wholesale Drugs warehouse in Opelousas was robbed. Three perpetrators held the company's president and general manager, Gayle R. White, at gunpoint and forced him to assist them in stealing various drugs. One of the men beat and kicked White, and hit him on the head with a revolver with sufficient force to cause the gun to go off. This same individual repeatedly threatened to kill White, but was stopped by the other two. The perpetrators left in White's car, which was later found abandoned.
At the scene, White gave the police a very basic description of the three men. He was hypnotized in September 1982, and a more detailed description was elicited. Thereafter, White was shown two or three books of mug shots. He identified Marvin Craig White, whose picture appeared in one of the books, as the man who had beaten him. On May 23, 1984 Gayle White picked the defendant out of a lineup. The other two perpetrators were never identified.
Marvin Craig White was convicted by a unanimous jury of armed robbery. The judge sentenced him to 99 years at hard labor without benefit of parole, probation or suspension. The defendant appeals, citing ten errors. Three were not briefed, and we consider them abandoned. The remainder form four issues.

*1102 I.
The defendant filed several motions involving challenges of the hypnosis of Gayle White, and his subsequent identification of the defendant. All the motions were denied. At the heart of these assignments of error is the contention that because Gayle White was hypnotized, his subsequent identification should not have been admissible.
Our Supreme Court said in State v. Porretto, 468 So.2d 1142 (La.1985), that:
"[13] This court has rejected a per se exclusion of testimony based on the fact of hypnosis alone. State v. Wren, 425 So.2d 756 (La.1983). See also State v. Goutro, 444 So.2d 615 (La.1984). In the instant case, there is no indication that the hypnotic session improperly enhanced Mrs. Bohmfalk's identifications of defendant. Defendant did not become a suspect in the case until about six months after Mrs. Bohmfalk underwent hypnosis. The transcript and tape of her December 28, 1979 hypnotic session show no indication that any attempt had been made to suggest a particular person to her. All of the witnesses who testified at the hearing on defendant's motion for a new trial gave no indication that the hypnotic session was in any way suggestive of defendant."
In the case at hand, several witnesses stated that no suggestion was made during the hypnosis session. White testified that his mental picture of the defendant was the same before and after he was hypnotized. As in Porretto, the defendant was not a suspect at the time. Several months after the session, and after looking at several hundred mug shots, White identified the defendant's picture without hesitation. He also expressed no doubts when he picked the defendant out of a lineup. The undetailed description given to the police at the scene of the crime did not conflict with the post-hypnotic description. (We note that in Porretto, the hypnotized victim did change her description.) It does not appear that the session affected White's ability to identify his assailant.
The defendant filed two motions to suppress the identification. As we have already stated, we find no improper suggestion as a result of the hypnosis session. In addition, the record shows that the lineup was properly conducted. The defendant's trial counsel was responsible for the selection of the individuals in the lineup. He testified that he chose men with characteristics similar to the defendant's. No one spoke to White during the identification process. The trial court properly denied these motions.
The defendant's motion for in camera inspection was also properly denied. He did not show that the State was in possession of any exculpatory evidence.
In reference to the denial of the defendant's motion in limine to test the foundation of the hypnotic identification, the trial judge commented that "Gayle White gave the same information before and after hypnosis. The hypnotic session did not add to his recollection." He concluded that "[i]t was not necessary for the foundation to be tested." We agree. This assignment is without merit.
The defendant further claims that a new trial should have been granted because of the improper identification. As discussed above, the identification by the victim was correctly admitted. Thus, the denial of this motion was proper.

II.
The defendant alleges that the trial court erred in denying a motion to recess, and in empaneling an alternate juror. One of the jurors had driven out of state between the jury selection and the date of trial, had mechanical problems, and was not able to return to Louisiana on the date set for trial. Instead of granting a recess, as requested by the defendant, the trial judge empaneled an alternate juror and proceeded to trial.
LSA-C.Cr.P. art. 789 states that alternate jurors "shall replace jurors who become unable to perform or disqualified *1103 from performing their duties prior to the time the jury retires to consider its verdict." In State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984), the court held the judge committed no error in empaneling an alternate juror where one of the jurors was unable to attend trial because of family problems. "The defendant's right to have the original twelve jurors selected decide his fate and his right to be present at certain stages of the proceedings are not absolute." State v. Clay, 441 So.2d at 1231. We find no error by the trial court in empaneling an alternate juror under the facts of this case.

III.
During his closing arguments, the district attorney made the following comments:
"We start out a case with the assumption that the defendant is innocent, but if that assumption lasted forever then we'd never be able to convict anybody. That assumption dies, ladies and gentlemen, when the State has proven beyond a reasonable doubt that the defendant did in fact commit the crime of which he is accused, and then the defendant can no longer rest on that presumption. Once the State has proved him guilty beyond a reasonable doubt then he can't just sit back and say, well, I'm going to rely on my presumption and come back and argue that the presumption is still there. The State has to overcome that presumption, and once that presumption is overcome then he can no longer rely on that. I submit to you that you did not hear one friend, relative or acquaintance of Marvin Craig White to appear in this courtroom to say to you, no, that couldn't have been Marvin Craig White in Opelousas because he was with me here, or he was with me there, or he was at this place, or that place. [Emphasis added]"
The defendant invokes LSA-C.Cr.P. art. 770, which provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
"(3) The failure of the defendant to testify in his own defense * * *"
The defendant did not testify at trial, nor did he present any witnesses on his behalf.
The district attorney made no direct reference to the failure of the defendant to testify. The defendant argues that the comments were an indirect reference, focusing the jury's attention on the lack of testimony by the defendant.
When an indirect allusion is made, it constitutes reversible error only when the prosecutor intended to emphasize defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La.1984). References in closing argument to the fact that the State's case stands uncontroverted do not generally constitute a ground for a mistrial, as such statements refer to the case as a whole and do not focus on the defendant's failure to testify. State v. Davis, 445 So.2d 163 (La.App. 3d Cir.1984).
In this case we find no intent to comment on the failure of the defendant to testify. Considering the argument as a whole, we conclude that the reference was intended to focus on the strength of the State's case, and the lack of evidence to refute it. The trial court did not err in denying the defendant's request for a mistrial.

IV.
The defendant contends that his 99-year sentence at hard labor, without parole, probation or suspension, is excessive. He argues that while his criminal record is "somewhat lengthy," it exhibits only a history of theft, not of violence.
A sentence which is within the statutory limitations may be reviewed for excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979).
*1104 The trial judge was influenced by two factors in imposing the maximum sentence allowable: the defendant's past criminal record, and the violent nature of this crime. He noted that the defendant had been convicted of shoplifting, theft and burglary in the past. At the time of trial, he was serving a life sentence in Texas for aggravated robbery, during which he allegedly shot one of his victims. During this crime, he beat, kicked and threatened Gayle White. The trial judge found no mitigating factors, and believed that a lesser sentence would deprecate the seriousness of the crime. We agree, and we affirm the sentence.

CONCLUSION
We find no merit to the defendant's assignments of error. His conviction and sentence are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.