539 So.2d 645 (1989)
STATE of Louisiana, Appellee,
v.
Cynthia WOODFIN, Appellant.
No. 20297-KW.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
*646 Steven R. Thomas, Mansfield, for appellant.
William J. Guste, Jr., Atty. Gen., Don M. Burkett, Dist. Atty., Robert E. Burgess, Asst. Dist. Atty., for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
We granted writs in this case to determine whether the trial judge erred by denying the State's motion in limine, which sought to exclude hypnotically-enhanced testimony of the defendant.
On or about April 17, 1987, defendant was either operating a motor vehicle or was a guest passenger in a motor vehicle which was involved in a one-vehicle accident in DeSoto Parish. When police arrived at the scene, the other party in the vehicle, Deborah Jean Goings, was found dead, and the defendant was located at a nearby residence. She told the officer that she was driving the vehicle and lost control, but that she did not remember anything else. Another officer and several other witnesses heard her make these statements.
The officer detected a strong odor of alcohol while talking with the defendant, and she admitted that she had been drinking. The defendant was not subjected to a field sobriety test because she was very upset at the time. She was arrested and advised of her rights. She was transported to the DeSoto Parish Sheriff's Office and advised of her rights relating to chemical breath tests. A breath test was administered, with results of .16g%. The defendant was charged by bills of information with the violation of La.R.S. 14:32.1 (vehicular homicide); La.R.S. 14:98 (DWI-2nd offense); and La.R.S. 32:415 (driving under suspension).
Sometime during December, 1987, defendant was referred by her attorney to Dr. Paul D. Ware, a forensic and consultative psychiatrist and neurologist in Shreveport for psychiatric evaluation and consideration of a diagnostic hypnotic interview. Due to the defendant's inability to recall any of the events surrounding the accident, it was felt that a psychiatric evaluation might assist her in recalling circumstances which led up to the accident.
A pre-hypnotic interview was conducted by Dr. Ware, followed by a hypnotic interview. The results of that psychiatric evaluation and hypnotic interview were summarized in a written report. In this report, Dr. Ware stated that the 29 year old defendant had been referred to him by her attorney for a psychiatric evaluation and consideration of a diagnostic hypnotic interview. He said that in the initial interview she reported considerable sadness and guilt about the death of her friend, and blamed herself to some extent. Regarding the accident, she could not remember exactly what happened or who was driving the truck. She gave a detailed description of what she did remember before undergoing hypnosis, though, and Dr. Ware summarized this in his report. Basically, she remembered drinking heavily with several friends, including the deceased, before the accident. Her next memory was regaining consciousness and being in a truck with Debbie (the deceased). She called for Debbie but got no answer. She ran to a nearby house and asked the residents to help her find her friend. Someone left to look *647 for her, and returned to inform the defendant that Debbie was dead. At this point, the defendant panicked and said "Oh my God I have killed her." She passed out several times after that, and the rest was hazy.
Based on this interview, Dr. Ware recommended that the defendant submit to hypnosis, and she agreed. The results of the hypnotic interview were also summarized by Dr. Ware in his report as follows: She was a difficult subject, slow to respond, but achieved a moderate trance. Her response appeared to be definite and very genuine. Under hypnosis she had greater recall of events leading up to the accident; she recalled many things in greater detail than she had before the hypnosis, which is very common. She clearly remembered leaving her home with her friend in her husband's truck. Her friend was driving the truck. She described this in detail, along with other events before and after the accident. She also demonstrated emotional catharsis with this recall. A videotape of the hypnotic interview was submitted as evidence for the court's consideration.
Upon learning of the psychiatric evaluation and hypnotic interview, and that the defendant would seek to introduce the report of that evaluation and interview, the prosecution filed a motion in limine, seeking to exclude any hypnotically induced or refreshed memory of the defendant for use at trial. The motion was denied.
In a written opinion, the trial judge noted that this case presents an issue which is res nova in Louisiana because it involves hypnotically enhanced testimony of a defendant rather than a witness. This is an important distinction, he said, because of the constitutional guarantees afforded a defendant in a criminal trial which are not afforded other witnesses. Relying on State v. Goutro, 444 So.2d 615 (La.1984), which allowed a witness to give hypnotically enhanced testimony because it was not inconsistent with his pre-hypnosis testimony, and which, in a concurring opinion by Justice Lemmon, suggested guidelines for cases in which the hypnosis revealed new information, the judge denied the motion to exclude the testimony. He stated that he believed defendant should be allowed to present to the trier-of-fact the entire factual circumstances surrounding the statements madeboth pre and post hypnosis including the procedures used during the hypnotic session and testimony regarding the field of hypnosis in general. The trier-of-fact could then determine the weight to be given the testimony.
The issue before this court is whether, and under what circumstances, the hypnotically-refreshed testimony of a defendant is admissible in a criminal trial.
The law on this issue is unsettled. While there have been several Louisiana cases addressing the issue of the admissibility of hypnotically enhanced testimony of witnesses, until this year no Louisiana court had spoken on the issue of admissibility of hypnotically enhanced testimony of a criminal defendant. This is a critical distinction, as the trial judge noted, since a defendant's constitutional right to present a defense is involved. The U.S. Supreme Court recently held that a state cannot enact a per se exclusionary rule banning all hypnotically enhanced testimony of a criminal defendant. Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Not decided, however, was the question at issue hereunder what circumstances may such testimony be admitted?
Most of the Louisiana cases dealing with hypnotically enhanced testimony of witnesses have allowed the testimony on the ground that the witness's memory was not in fact "enhanced", because the post-hypnosis testimony differed little, if at all, from the defendant's pre-hypnosis recollection. Thus, the courts usually found it unnecessary to decide whether and under what circumstances the hypnotically enhanced testimony of a witness which does produce new or additional information is admissible. See, e.g. State v. Wren, 425 So.2d 756 (La.1983); State v. Moore, 432 So.2d 209 (La.1983); State v. Goutro, supra; State v. Porretto, 468 So.2d 1142 (La.1985); and State v. White, 498 So.2d 1100 (La.App. 3d Cir.1986).
*648 However, Justice Lemmon, concurring in State v. Goutro, supra, noted the inevitability of this issue arising, and suggested some brief guidelines. He stated that:
1) The proponent who seeks to introduce hypnotically-enhanced testimony should be prepared to demonstrate the content and degree of the witness's recall before hypnosis. A written or recorded statement in as much detail as possible should be taken.
2) The hypnotic session should be recorded.
3) The hypnosis should be conducted by a qualified (and preferably independent) hypnotist.
Justice Lemmon also suggested looking to other jurisdictions for guidance on this issue.
Several jurisdictions have adopted an "admissibility per se" approach to the use of hypnotically enhanced testimony of witnesses. The rationale of this line of cases is that hypnosis should not be treated any differently than other forms of refreshing a witness's memory. The manner of refreshing the witness's recollection is thought to be a matter affecting credibility rather than admissibility, and skillful cross-examination is presumed to enable the fact-finder to evaluate the effect of the hypnosis on the witness. See, e.g. U.S. v. Adams, 581 F.2d 193 (9th Cir.1978), cert. denied, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683; State v. McQueen, 295 N.C. 96, 244 S.E.2d 414 (1978); Chapman v. State, 638 P.2d 1280 (Wyo.1982). Also see 44 La.L.Rev. 1939.
Other jurisdictions have refused to admit this type of testimony under any circumstances because of inherent problems with reliability. The concerns are that hypnosis has not gained a sufficiently widespread acceptance in the scientific community as a reliable method of restoring recall; that subjects of hypnosis are extremely suggestible and immune to effective cross-examination because of "memory hardening" caused by the hypnosis; and that the fact-finder will give undue weight to this kind of testimony. See, e.g. People v. Shirley, 31 Cal.3d 18, 181 Cal Rptr. 243, 723 P.2d 1354 (1982); State v. Mena, 128 Ariz. 226, 624 P.2d 1274 (1981); State v. Mack, 292 N.W.2d 764 (Minn.1980); Polk v. State, 48 Md.App. 382, 427 A.2d 1041 (1981); 44 La. L.Rev. 1939; McCormick's Handbook of the Law of Evidence, § 206 (E. Cleary 3d Ed.1984).
To counteract these disadvantages, some states have adopted a moderate approach, sometimes called "conditional admissibility", whereby those seeking to have the hypnotically enhanced testimony of a witness introduced at trial must adhere to strict procedural safeguards. While recognizing the inherent dangers of hypnosis as a memory refreshing device, these courts are also concerned that the exclusion of this testimony per se may result in the exclusion of some evidence that is as trustworthy as that elicited by other methods, and hold that the disadvantages of hypnosis can be effectively counteracted by adherence to strict procedural safeguards.
The leading case in this regard is State v. Hurd, 86 N.J. 525, 432 A.2d 86 (1981), which held that hypnotically enhanced testimony of a witness is admissible if the proponent of such testimony proves, in a hearing outside the presence of the jury, that the use of hypnosis in the particular case was reasonably likely to produce recall comparable in accuracy to normal human recall, which is also often historically inaccurate. In this hearing the judge is to determine whether 1) the particular case is likely to yield normal recall if hypnosis is properly administered, and 2) whether the procedures followed were reasonably reliable.
In determining the appropriateness of hypnosis for the particular case, the Hurd court stated that the judge should consider the reason for the loss of memory and whether the subject has any discernable motive for not recalling a particular version of events. To aid the judge in evaluating the reliability of the procedure used, the court set forth the following procedural safeguards:
1) Hypnosis should be conducted by a qualified professional experienced in the use of hypnosis. He should also be able *649 to qualify as an expert in order to aid the court in evaluating the procedures followed.
2) The professional should be independent of and not regularly employed by the prosecution, investigator or defense.
3) Any information given to the hypnotist by law enforcement personnel or the defense is to be recorded, either in writing or another suitable form. This is to help the court determine the extent of information the hypnotist could have communicated to the witness either directly or through suggestion.
4) Before inducing hypnosis the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them. The hypnotist should carefully avoid influencing the description by asking structured questions or adding new details. Hurd, supra, 432 A.2d at 96, 97.
If the testimony is admissible, the court held that the opponents may challenge the reliability of the procedures followed in the particular case with expert testimony at trial, but may not attempt to prove the general unreliability of hypnosis. It is for the trier-of-fact to then determine the weight to accord the testimony.
Regarding the burden of proof, the Hurd court held that the party seeking to introduce hypnotically enhanced testimony has the burden of establishing admissibility by clear and convincing evidence. This heavy burden was thought by the court to be justified by the potential for abuse of hypnosis, the genuine likelihood of suggestiveness and error, and the resulting risk of injustice. The court further stated that this type of testimony must not be used where it is not reasonably likely to be accurate evidence.
State v. Marilyn Below, Nos. K88990 and K88977 (3rd Cir.1988), writ denied, 534 So.2d 445 (La.1988), appears to be the only Louisiana case which has dealt with this issue of the admissibility of hypnotically enhanced testimony of a criminal defendant. In that case, the District Court granted the State's motion to exclude the videotape of the defendant's hypnotically enhanced testimony, but refused to exclude, as evidence, all testimony which was enhanced by the hypnotic session. In its opinion, the court expressed serious reservations about the constitutionality of limiting a defendant's right to testify and noted the inherent difficulties in determining which testimony was in fact "enhanced" by the hypnosis.
The Court applied the Hurd guidelines and refused to admit the videotape, however, finding those guidelines had not been sufficiently followed. In particular, it found that the psychiatrist performing the hypnosis was not independent, as required by the guidelines, because he had been treating the defendant for approximately two years before the hypnotic interview. He further found that other guidelines were not followed, including the requirement that the defendant's pre-hypnotic memory be recorded in written form. Because of these factors, the danger of unreliability and/or suggestiveness was found to outweigh any relevancy the evidence might have. The Third Circuit and the Supreme Court both denied writs.
We believe the correct approach to this situation is that taken by those jurisdictions which admit the testimony subject to strict procedural safeguards, in order to minimize the dangers of unreliability and suggestiveness inherent to hypnosis. Justice Lemmon's suggestions provide guidance regarding the minimum level of procedural safeguards our Supreme Court would require. However, as he also suggested looking to other jurisdictions for guidance on this issue, we adopt the guidelines set forth in the Hurd opinion, as we find that court's solution to be reasonable and carefully thought out.
We agree with the trial judge that the defendant should be allowed to present to the trier-of-fact all of the surrounding circumstances of the hypnotic interview. The defendant must first establish the admissibility of this testimony out of the presence of the jury. The reliability and lack of suggestiveness (i.e. that the probative value outweighs any prejudice) must be proven by clear and convincing evidence. In *650 order to aid the court in evaluating the reliability of the testimony, adherence to the six procedural safeguards in Hurd must be demonstrated. If the court decides the testimony is admissible, the opponent may challenge it at trial in the same manner outlined in Hurd. Additionally, in cases in which the fact-finder is a jury, a cautionary instruction regarding the potential dangers of hypnosis should be given. The weight to be accorded the testimony is then a question for the trier-of-fact.
Accordingly, we REMAND this case to the district court with instructions to apply the described guidelines at the appropriate time in determining the admissibility of defendant's hypnotically enhanced testimony.