554 So.2d 121 (1989)
STATE of Louisiana, Appellee,
v.
David W. HOLDEN, Appellant.
No. 21233-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
*122 Laura J. Johnson and John Makar, Natchitoches, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., James Calhoun, Asst. Dist. Atty., Winnfield, for appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, David W. Holden, was convicted by a jury of distribution of cocaine, a violation of LSA-40:967. The defendant was sentenced to five years at hard labor, but his sentence was suspended and he was placed on five years supervised probation. Special conditions of probation were imposed. The defendant appeals his conviction and sentence. For the following reasons, we reverse his conviction and sentence and remand the case to the trial court for a new trial.

FACTS
On February 25, 1987, Deputy Reginald Fields, of the Natchitoches Parish Sheriff's Office, was assisting Winn Parish officials in an undercover drug investigation. Robert Rachal, an individual who was familiar with the Winnfield area, was assisting Fields by leading him to locations where drugs were sold.
On that evening, at approximately 6:25 p.m., Fields and Rachal were walking around a housing project in Winnfield. Fields testified that the defendant, a 500 pound male, drove up behind him in a blue vehicle and asked if Fields and Rachal needed a ride. Fields responded that he was looking for some "caine," referring to cocaine. The defendant replied that he could find some, and drove away. The defendant returned within minutes with a package containing approximately one-half gram of cocaine which he sold to Fields for $50. The defendant then drove away again.
Fields returned to his vehicle which was parked a short distance away. He made a note of the date, time and the suspected type of drug on a small piece of notebook paper and wrapped the note around the suspected drug. He then secured the evidence in his vehicle and continued with his investigation.
The evidence was subsequently turned over to the crime lab for analysis. The substance was scientifically identified as cocaine.
On April 9, 1987, the defendant was arrested for distribution of cocaine. On June 1, 1987, a bill of information was filed, charging the defendant with one count of distribution of cocaine.
*123 The defendant was tried by jury on October 24-25, 1988. At trial, both Fields and Rachal[1] identified the defendant as the individual who sold them cocaine on February 25, 1987. The record shows that both witnesses were positive of their identifications, in part because of the defendant's excessive weight.
The defendant presented two alibi witnesses, Willie Starks and Wiley Thomas. These witnesses testified that the defendant was with them on February 25, 1987 from 4:30 p.m. until approximately 7:30 p.m. while they were working on their automobiles.
The defendant testified in his own behalf. He stated that he was initially unable to remember precisely where he was on the evening of February 25, 1987. Therefore, he discussed the matter with friends and he also underwent hypnosis. Outside the presence of the jury, the defendant testified that through the use of these techniques, he was able to remember that he was at a friend's house working on automobiles at the time the charged offense allegedly occurred. The trial court ruled that because the defendant was unable to demonstrate an independent recollection of his whereabouts at the time the offense was to have taken place, he would not be permitted to present his own testimony as to alibi. The defendant was found guilty as charged.
On January 17, 1989, the defendant was sentenced to serve five years at hard labor. However, the sentence was suspended due to health problems stemming from the defendant's obesity. The defendant was placed on five years supervised probation, was fined $1,000 and was assessed court costs. The court imposed special conditions of probation which required the defendant to pay $5,000 to the criminal court fund, to enter a substance abuse program, to give 300 hours of community service, to pay $100 to cover the cost of supervising his community service work and to pay $15 per month to the Department of Corrections to offset the costs of overseeing his probation.
The defendant appealed his conviction and sentence. He contends that the trial court erred in excluding his alibi testimony where his memory had been refreshed by discussions with friends. He also contends that the trial court erred in excluding his alibi testimony where his memory had been hypnotically refreshed. He also argues that there was insufficient evidence to support his conviction.

ALIBI DEFENSE
The defendant argues that the trial court erred in refusing to allow him to present testimony concerning his alibi defense that he and his friends were working on their cars on February 25, 1987, at the time the charged offense allegedly occurred. The trial court ruled that because the defendant had no independent recollection of his whereabouts, and could only testify as to his memory refreshed by hypnosis and by conversations with his friends, the defendant would not be allowed to testify in support of his alibi defense. The failure to allow the defendant to present his alibi defense constitutes reversible error.

Hearsay Refreshed Memory
The defendant was precluded from presenting testimony concerning his alibi defense because the court ruled his memory was refreshed by hearsay and therefore his testimony was inadmissible.
In addition to presenting the testimony of two friends who claimed the defendant was with them at the time of the alleged offense, the defendant took the stand in his own defense. At trial, out of the hearing of the jury, the defendant testified that he *124 discussed the present offense with a friend, Robert Price, who was also present when the defendant and his friends were working on automobiles. The defendant stated that since he was not arrested until April 9, 1987, over thirty days after the alleged crime was committed, he did not initially remember that it was February 25, 1987 when he and his friends worked on the automobiles. After his arrest, the defendant discussed the matter with Robert Price. Price was also charged with selling drugs to Fields and Rachal on the same date, approximately five minutes after the sale allegedly made by the defendant.
The defendant testified that Robert Price reminded him that the group worked on cars that evening. Price also stated that on February 25, 1987 he had borrowed money from his wife with which to purchase car parts. Price said that his wife had made a note of the transaction.
The defendant testified that following this conversation with Price he had an independent recollection of the events which occurred on February 25, 1987. Nevertheless, the trial court ruled that the defendant had no independent recollection and was testifying only as to what others had told him, therefore his testimony, based upon hearsay, was inadmissible.
In the present case, the defendant was not offering the out-of-court statements made by Price for the truth of the matter asserted. The defendant was merely attempting to establish the process by which his own independent recollection was revived regarding his whereabouts on the evening of February 25, 1987. The defendant was offering his own first hand testimony regarding his alibi defense as he was constitutionally entitled to do.
Criminal defendants have the right to testify in their own behalf under the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment, and the privilege against self-incrimination under the Fifth Amendment to the United States Constitution.[2]Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Although this right is not without limitation, in the present case the trial court made an erroneous ruling which impermissibly denied the defendant his right to testify in his own behalf.
We are not unmindful that a foundation must be laid for the testimony of witnesses and that, generally, "the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him." LSA-R.S. 15:463.[3] Here, the witness's memory was refreshed and he was then about to "testify ... as to facts within his knowledge." His discussion with his friends only served to "jog his memory" and made him competent to testify as to facts within his own personal knowledge. Further, the defendant's right to present his defense and to exercise his constitutional right to testify before the jury must be balanced against the need for proper evidentiary rules relating to the foundation for the introduction of evidence. The defendant was entitled to present his own testimony concerning his alibi defense and the trial court erred in denying him that opportunity.
The defendant had a right to fully present his defense. La. Const. of 1974, Art. I, § 16. His testimony was not hearsay and he had a right to testify. The jury could then evaluate the credibility of that testimony and determine the weight to be assigned to it. The trial court's erroneous decision, precluding the defendant from making out his alibi defense, denied the defendant important constitutional rights and may have had an affect upon the outcome of the trial. Therefore the trial court ruling cannot be said to constitute harmless error.
LSA-C.Cr.P. Art. 921 provides:
A judgment or ruling shall not be reversed by an appellate court because of *125 any error, defect, irregularity or variance which does not affect substantial rights of the accused.
In cases where error is committed by the trial court, the conviction will not be overturned if the reviewing court finds beyond a reasonable doubt that the error was harmless in light of the totality of the circumstances. State v. Humphrey, 412 So.2d 507 (La.1982); State v. Redman, 449 So.2d 636 (La.App. 1st Cir.1984), writ denied 456 So.2d 170 (La.1984).
The defendant was tried by jury. Two witnesses testified on behalf of the defendant, stating that he was with them at the time the state's witnesses said the offense occurred. The fact that the defendant took the stand and failed to corroborate the testimony of his own alibi witnesses concerning his whereabouts at the time of the commission of the alleged offense may have affected the outcome of the trial. In light of the totality of the circumstances of this case, we cannot say, beyond a reasonable doubt, that the error was harmless. Therefore, the trial court ruling constitutes reversible error. The case must be reversed and remanded for a new trial.

Hypnotically Refreshed Memory
Because we reverse and remand on other grounds, a discussion of other alleged errors raised by the defendant is not necessary. However, because the defendant has raised an important issue regarding hypnotically refreshed memory, which may become an issue upon a new trial of this case, we will address the defendant's argument.
Following the testimony of the defendant's friends that the defendant was with them at the time of the alleged offense, the defendant took the stand in his own defense. He stated that at first he had no independent recollection of events that took place on February 25, 1987.
However, apart from any conversation the defendant may have had with his friends concerning the evening of February 25, 1987, it was determined that the defendant had seen a psychologist and that his memory may have been refreshed through hypnosis. The defendant then attempted to testify as to what he remembered, without first laying a foundation to establish that proper hypnotic procedures were used and that his memory was not impermissibly tainted by the use of hypnosis. Without such a foundation, the defendant's testimony regarding new recollections he gained through the use of hypnosis would not be admissible. However, the trial court, without reference to foundation, refused to allow the defendant to testify, on any basis, regarding hypnotically refreshed memory.
Following an objection by the state regarding the defendant's hypnotically refreshed memory, the court ruled:
Well, (A) I am not going to allow this defendant to testify as to anything that he learned through hypnosis. That is an absolute. (2) You are going to have to lay a strong predicate and totally segregate his recollection at this point, whatever it may be, of the 25th from anything that came through hypnosis. [Emphasis supplied.]
In the past, many states formulated per se rules excluding hypnotically refreshed testimony under any circumstances. These rules were based upon the proposition that such testimony is always unreliable due to the suggestivity that may occur in the use of hypnosis which taints the resulting testimony. Such a rule leaves a trial court no discretion to admit such testimony, even if the judge is persuaded at a pretrial hearing that the procedures used were not unduly suggestive and that the resulting testimony is reliable and has not been tainted by hypnosis.
In Rock v. Arkansas, supra, the United States Supreme Court considered the issue of whether an evidentiary rule which prohibited the admission of hypnotically refreshed testimony, under all circumstances, violated a defendant's constitutional right to testify in his own behalf. The court ruled that criminal defendants have a right to testify in their own behalf under the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment and the privilege against self-incrimination in the Fifth Amendment *126 of the United States Constitution. The court stated that while this right was not without limitation, restrictions on the right must not be arbitrary or disproportionate to the purposes they are designed to serve.
The court went on to find that a per se exclusionary rule which banned all hypnotically refreshed testimony impermissibly infringes on a criminal defendant's right to testify in his own behalf. In Rock v. Arkansas, supra, the court said:
Logically included in the accused's right to call witnesses whose testimony is "material and favorable to his defense," United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony.
In State v. Woodfin, 539 So.2d 645 (La. App.2d Cir.1989),[4] this court, considered the issue of whether and under what circumstances the hypnotically refreshed testimony of a defendant is admissible in a criminal trial. After reviewing the jurisprudence on the subject and particularly the pronouncements in Rock v. Arkansas, supra, and State v. Hurd, 86 N.J. 525, 432 A.2d 86 (1981), this court held that hypnotically refreshed testimony may not be excluded per se, but, in order to establish admissibility, certain guidelines and safeguards must be adhered to. First, the defendant must establish the admissibility of the testimony outside the hearing of the jury. Reliability of the hypnotic procedures used and lack of suggestiveness must be proven by clear and convincing evidence. Further, in order to aid the court in evaluating the reliability of the procedure used, adherence to the procedural guidelines set forth in State v. Hurd, supra, must be demonstrated. Those procedural guidelines, which were adopted by this court, are as follows:
1. Hypnosis should be conducted by a qualified professional experienced in the use of hypnosis. He should also be able to qualify as an expert in order to aid the court in evaluating the procedures followed.
2. The professional should be independent of and not regularly employed by the prosecution, investigator or defense.
3. Any information given to the hypnotist by law enforcement personnel or the defense is to be recorded, either in writing or in another suitable form. This is to help the court determine the extent of the information the hypnotist could have communicated to the witness either directly or through suggestion.
4. Before inducing hypnosis, the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them. The hypnotist should carefully avoid influencing the description by asking structured questions or adding new details.[5]
In Woodfin, we went on to hold that if the court decides the hypnotically enhanced testimony is admissible, the opponent may challenge the reliability of the procedures used in a particular case with expert testimony at trial, but may not attempt to prove the general unreliability of hypnosis. The trier of fact will then determine the weight to be given to the testimony. In cases in which the fact finder is a jury, a cautionary instruction regarding the potential dangers of hypnotism should be given.
*127 The party seeking to introduce hypnotically enhanced testimony has the burden of establishing admissibility by clear and convincing evidence.
Upon retrial, if a proper foundation is laid pursuant to Woodfin, the defendant should be permitted to testify as to the facts he recalls, even if his recall is enhanced by hypnosis.

SUFFICIENCY OF EVIDENCE
The defendant also alleges that under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there was insufficient evidence upon which to base a finding of guilt.
The defendant does not allege that the state failed to prove an element of the offense charged. Rather, he alleges that the witnesses presented by the state were not credible. The issue of witness credibility is not properly raised under a Jackson inquiry. La. Const. of 1974 Art. 5 § 5(C); State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Chevalier, 458 So.2d 507 (La.App. 4th Cir.1984).
The record demonstrates that the prosecution put forth evidence in support of all the elements of the offense of distribution of cocaine. The evidence produced by the state, which was apparently believed by the jury, was sufficient to support the defendant's conviction. Due to the trial court error previously discussed, the defendant's conviction must be reversed, his sentence vacated, and the case remanded for new trial. However, upon remand, the state is not barred from retrial of the defendant on the same charge.

CONCLUSION
For the reasons stated above, we reverse the conviction and sentence of the defendant, David W. Holden, and remand the case to the trial court for a new trial, in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] Defense counsel attempted to impeach Rachal on cross examination by questioning him about prior conversations they had about the case. Rachal confirmed that he had gone to defense counsel and told her that he was being induced to testify through threats and that the defendant was not involved in drug deals. At trial, however, Rachal stated that he lied to defense counsel and that, in fact, the defendant had participated in the drug sale on February 25, 1987. Rachal confirmed his testimony to that effect given in a prior proceeding against the defendant.
[2] Similar rights are guaranteed under La.Constitution of 1974, Article I, § 16.
[3] This case was tried in October, 1988, prior to the effective date of the Louisiana Code of Evidence on January 1, 1989. Therefore, this case is decided upon the prior statutory law and jurisprudence on evidence.
[4] The order of appeal in the present case was entered on January 17, 1989. The decision in State v. Woodfin, supra, was handed down January 18, 1989. Because the present case was on direct review when State v. Woodfin, supra, was decided, the principles applied in that case are applicable in the present case. See State v. Pierre, 515 So.2d 769 (La.1986).
[5] In State v. Woodfin, this court stated that we adopted the six procedural guidelines set forth in State v. Hurd, supra. However, we inadvertently failed to list in the opinion all six of those guidelines. Guidelines 5 and 6 are as follows:

(5) All contacts between the hypnotist and the subject must be recorded.... The use of videotape, the only effective record of visual cues, is strongly encouraged but not mandatory.
(6) Only the hypnotist and the subject should be present during any phase of the hypnotic session, including the prehypnotic testing and the posthypnotic interview.