444 So.2d 615 (1984)
STATE of Louisiana
v.
Larry GOUTRO, Jr.
No. 82-KA-2117.
Supreme Court of Louisiana.
January 16, 1984.
*616 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for plaintiff-appellee.
Charles R. Browning, Livonia, for defendant-appellant.
LEMMON, Justice.
This is an appeal from a conviction of aggravated rape and a sentence to life imprisonment at hard labor. The sole assignment of error is that the trial court erred in admitting the testimony of a witness who had been subjected to hypnosis for the purpose of enhancing her recollection of the events surrounding the crime. Since the state proved that the hypnosis did not affect the witness' testimony, in that the witness after undergoing hypnosis did not recall any facts other than those she had related to the police prior to hypnosis, this case is controlled by State v. Wren, 425 So.2d 756 (La.1983), in which this court rejected a per se exclusion based on the fact of hypnosis alone.
The victim was an eight-year old girl. Because the child's mother was to be away from home for several days, the child was left on March 5, 1981 in the care of the mother's sister, Margie Fruge, who at the time was living with defendant. The rape (or rapes) occurred during the ensuing four-day period, during which Ms. Fruge and defendant consumed considerable amounts of alcohol and drugs.
The rape was reported to the chief of police (the victim's uncle) during the early morning hours of March 9 by another sister of Ms. Fruge. The chief searched the town and found the child with defendant and Ms. Fruge in defendant's car. He rushed the child, who was screaming in pain, to the hospital.
When initially questioned, both Ms. Fruge and the child blamed Joseph Smith (a fictitious name for a cousin of the child) for the child's rape-related injuries. However, each quickly corrected this accusation, stating that defendant had ordered them to blame Smith if the vaginal injury came to the attention of the authorities. The same day, Ms. Fruge gave a detailed written statement to the police, in which she asserted that defendant had given the child a Quaalude and had instructed her to undress the child and to "finger" her in preparation for him. She added that defendant told her on one occasion during the four-day period that he had "stuck his finger in her [the child] and a little bit of his thing" and on another occasion that he had "put it all the way in that night".
Prior to trial, Ms. Fruge was subjected to hypnosis by a police officer who had received some training in hypnotic techniques and who had been performing hypnosis for about a year. During the hypnotic session, according to the testimony of the officer, Ms. Fruge related the same events that she had described in her statement, but clarified the times and dates of these events, *617 overcoming to some extent her previous difficulty in recalling times and dates.
At trial Ms. Fruge testified as follows: The child had fallen asleep after defendant gave her a Quaalude. Defendant then asked her "to finger her ... to open it up so that it wouldn't be so hard for him to get it in". Defendant later took the child to the bedroom, announcing his intention to have intercourse with the child. The next day she found defendant naked on one bed and the child clothed in panties and a T-shirt on the other bed in the room. Defendant told her that he had raped the child vaginally and anally.[1] She later related this to her sister, who reported the incident to the police. Throughout the testimony, however, Ms. Fruge admitted that she could not remember much of the four-day period.[2]
Because Ms. Fruge's trial testimony was more confused and less clear than her initial written statement, the hypnotic session obviously did not produce any additional recollection of details.[3] Therefore, as in Wren, this case does not involve the question of the admissibility of hypnotically-induced testimony, nor does it present any danger of "confabulation" or "undue suggestion". There is not even the problem of a possible "cementing" of the witness' memory which renders cross-examination ineffective to delve into possible inconsistencies or to reveal faulty recollection. Furthermore, the witness here was a close friend of defendant who testified concerning events which transpired in her presence, and there was no need to probe her memory on questions of identity or questions of the nature of the sexual abuse of the child. The sole object of the hypnosis was to clarify the time sequence of the events.
Adhering to Wren, we conclude that the trial court did not err in permitting the witness to testify.
Accordingly, defendant's conviction and sentence are affirmed.
CALOGERO, J., concurs with reasons.
LEMMON, J., assigns additional reasons.
CALOGERO, Justice, concurring.
I concur in the result reached by the majority. As stated in my remarks (concurring in part and dissenting in part) to State v. Wren, 425 So.2d 756 (La.1983), a witness who has been hypnotized should nonetheless be allowed to testify at trial to what he remembered and related prior to the hypnosis.
In order to prove this conclusively, it would appear that the state would have to present a written or recorded pre-hypnosis statement from the witness and a record of the hypnosis session itself. No such record was made of that session in the instant case.
However, I nonetheless concur in view of the fact that the witness's testimony at trial was more disjointed than it had been in her pre-hypnosis statement, and because of the overwhelming evidence of defendant's guilt even absent this witness's testimony.
LEMMON, Justice, assigning additional concurring reasons.
Because this case did not present any issues not previously addressed in the Wren decision, we did not attempt to set out guidelines which should be followed if a witness is subjected to hypnosis preparatory to use of the witness' testimony at *618 trial. Nevertheless, the question of whether and when hypnotically-induced testimony is admissible will eventually be confronted, as it has been in many other jurisdictions. See the cases collected in Justice Blanche's opinion in State v. Wren, above. Therefore, law enforcement policy makers would do well to consider taking steps to assure a high degree of "scientific reliability" in hypnotic interview sessions, in order to make the "best case" for admissibility in the event that the witness recalls new information while under hypnosis.
Some courts have admitted hypnotically-refreshed testimony without requiring compliance with predicate guidelines for admissibility. See, for example, State v. Armstrong, 110 Wis.2d 555, 329 N.W.2d 386 (1983). On the other hand, some courts have refused to accept the scientific basis of hypnotically-refreshed memory, even when guidelines such as those promulgated by the Supreme Court of New Jersey in State v. Hurd, 86 N.J. 525, 432 A.2d 86 (1981) are followed. These courts, fearing the unreliability of such testimony (because of concerns about confabulation and undue dangers of distortion, delusion, or fantasy), have rejected its admissibility. See, for example, People v. Hughes, 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (1983).
Until the Legislature or this court adopts a firm position regarding the admissibility of testimony concerning matters recalled after hypnosis, law enforcement officers and prosecutors should, at the least, be prepared to demonstrate the content and degree of the witness' recall before hypnosis. Obviously, a written or otherwise recorded statement (in as great detail as possible) should be taken. Second, the hypnotic session itself should be recorded so that there is no question as to the events recalled or the manner in which the hypnotic session was conducted. Third, the hypnosis should be conducted by a qualified (and preferably independent) hypnotist.
At this point, Louisiana courts have only taken one step: We have refused to follow those decisions which bar all testimony by a witness who has been subjected to hypnosis concerning the events about which he is to testify. We have held only that the witness' testimony is admissible when the state proves that the hypnosis had no effect on the witness' recall of events related before hypnosis. See State v. Moore, 432 So.2d 209 (La.1983); see also People v. Hughes, above.[1]
At this juncture, this court has not adopted guidelines for admissibility under our supervisory authority and will probably handle the issue on a case-by-case basis. However, the cases will inevitably arise, and those in a policy-making position in law enforcement would be well advised to consider the guidelines and safeguards adopted in other jurisdictions if hypnosis is to be used to aid witnesses to strengthen their recollections.
NOTES
[1] The child also testified at trial, but did not remember anything that happened after defendant gave her a pill for her headache, except that she awoke hurting "at my bottom". She further testified that defendant threatened to kill her if she told anyone about his actions and instructed her to say that her cousin had "done it to her".
[2] Another witness, Cathy Dixon, who was with Ms. Fruge, defendant and the victim at some point during the period, testified that the child told her defendant had "done it to the front and to the back".
[3] Mrs. Fruge was initially indicted along with defendant, but she agreed to testify against him in return for a promise of use immunity and a promise that she would be prosecuted only as an accessory after the fact.
[1] In Commonwealth v. Kater, 388 Mass. 519, 447 N.E.2d 1190 (1983), for example, the Massachusetts Supreme Court held that a witness may only testify concerning matters recalled before the hypnotic interview and may not testify concerning matters recalled as a result of "hypnotically-aided memory". Kater also prospectively required that safeguards (guidelines and standards) be followed "to assure that the pre-hypnotic memory of witnesses would not be affected".