809 So.2d 556 (2002)
STATE of Louisiana
v.
Marvin J. SMITH, Jr.
No. 2001 KW 1027.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*558 Victor J. Woods, Assistant District Attorney, Port Allen, for State of Louisiana.
Tommy Thompson, Port Allen, for Marvin J. Smith, Jr.
Before: FOIL, FITZSIMMONS and DOWNING, JJ.
FOIL, Judge.
Relator has been indicted with "aggravated rape of a juvenile under the age of twelve," a violation of La. R.S. 14:42. The state amended the indictment to allege the date of the victim's birth and that the victim "resisted to the utmost but her resistance was overcome by force of the defendant." The indictment also charged relator with three counts molestation of a juvenile by virtue of a position of control or supervision. The molestation counts involve different victims. The trial court severed those counts, and they are not at issue in this writ application.
In this writ, relator seeks review of the denial of the following motions: motion to *559 quash indictment because of delay in prosecution; motion to quash indictment because of running of statute of limitations; motion to discover and obtain evidence relative to hypnotically enhanced, refreshed and/or induced testimony; motion to exclude hypnotically enhanced, refreshed or induced testimony; and motion to challenge hypnotically refreshed testimony and, thereafter, to exclude same. This court issued a writ of certiorari and ordered the parties to file briefs and appear for oral argument.
Facts: Because the case has not gone to trial, the factual allegations for the offense are limited. At one of the pretrial hearings, the victim testified that defendant lived next door to her family when she was a child. On a day in November 1996, when she was twelve years old, she was staying with defendant's wife while her parents were gone. At a time when defendant's wife was away from the residence, defendant instructed the victim to go into the bathroom. In the bathroom, defendant made the victim bend over the bathtub. He held his hand on the back of her neck and penetrated her anally. Defendant warned the victim that if she told anyone he would hurt her parents.
The original indictment says the offense occurred in "1996." The state's response to a request for a bill of particulars alleges the rape occurred between 1973 and 1977. At the hearings, the parties referred to the state having amended the indictment to allege that the aggravated rape occurred in November 1976 (when the victim would have been 12). Although this amendment is not in the record, at a hearing held in December 1999 the prosecutor referred to there having been a hearing in the previous month, at which time the victim testified and narrowed down the date of the offense to a very specific date. The transcript of that particular November hearing is not in the record, and relator did not include the transcript of that hearing in the writ application. During the December hearing, the victim testified. She acknowledged her earlier testimony about the offense occurring in November of 1976.
Assignment of error number 1, Delay in institution of prosecution: In a "motion to quash indictment because of delay in prosecution," relator asked the trial court to quash the indictment due to preindictment delay. The trial court denied the motion.
In seeking review of that ruling, relator argues the delay in the institution of prosecution prejudices him in the preparation of his defense because he is not able to recall what he did in November 1976. He maintains that, because of the passage of time, he no longer is able to assemble witnesses to testify on his behalf, is effectively deprived of the use of an alibi, is deprived of the right to confront witnesses, and is deprived of the right to effective counsel because his attorney could not possibly prepare a defense under such circumstances.
As discussed later in assignment of error number 2, there is no statutory time limit for the institution of prosecution in this aggravated rape case. In this first assignment, relator does not cite any authority in support of his claim. Based on the arguments presented, the apparent legal basis is a violation of due process.
Constitutional guarantees to a speedy trial are not invoked until a citizen becomes an accused, either by arrest or indictment. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); State v. Schrader, 518 So.2d 1024, 1028 (La.1988). For preaccusation delay, due process is the standard. The proper approach in determining whether *560 the accused has been denied due process of law through preindictment or prearrest delay is to measure the government's justifications for the delay against the degree of prejudice suffered by the accused. Schrader, 518 So.2d at 1028 (quoting State v. Malvo, 357 So.2d 1084, 1087 (La.1978)).
The U.S. Supreme Court distinguishes between "tactical" delay and "investigative" delay. To show a violation of due process from preindictment tactical delay, a defendant must show that the government deliberately delayed bringing the indictment in order to gain a tactical advantage and that the delay caused the defendant actual and substantial prejudice in presenting his defense. State v. Dickerson, 529 So.2d 434, 439 (La.App. 1st Cir.), writ denied, 533 So.2d 353 (La.1988). See also United States v. Lovasco, 431 U.S. 783, 795 n. 17, 97 S.Ct. 2044, 2051 n. 17, 52 L.Ed.2d 752 (1977); Marion, 404 U.S. at 324, 92 S.Ct. at 465; State v. Hughes, 94-1364, p. 6 (La.App. 4th Cir.12/28/94), 648 So.2d 490, 493, writ denied, 95-0255 (La.3/24/95), 651 So.2d 292. In Lovasco, the U.S. Supreme Court held "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2051-52.
To prove prejudice resulting from tactical delay, the defendant's showing must be concrete, not speculative. Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice. See Dickerson, 529 So.2d at 439-40 (quoting United States v. Antonino, 830 F.2d 798, 805 (7th Cir.1987)). In Dickerson, this court placed on the defendant the burden of establishing the government deliberately delayed bringing the indictment in order to gain a tactical advantage. In Schrader, the Louisiana Supreme Court, in balancing the reasons for the delay with the resulting prejudice, noted that the state had offered no evidence regarding the reasons for the delay. 518 So.2d at 1028. Such a comment appears to require the state, not the defense, to show the reasons for the delay. Even if the state has an obligation to present its reasons for the delay, the defense has the ultimate burden of proving bad faith on the part of the state.
In Schrader, there was an almost 15-year delay between the offense (a murder resulting from arson) and the indictment. The court found no prejudice resulting from the defendant's inability to examine the site as it existed after the fire. The court explained that the defendant was able to present testimony from both of the men who originally investigated the blaze. The court also noted that witnesses who had heard the defendant's threat to burn down the house did not tell the authorities about those threats until after the defendant's arrest.
In the instant case, the offense allegedly occurred in November of 1976, and the indictment was issued in September of 1996. The reason for the state's almost twenty-year delay in filing the indictment is not evident from the record, and it is not clear when the authorities became aware of the alleged rape. The victim's medical records (filed under seal) indicate that, before the rape was reported to the authorities, the victim had told her mother and two friends about the rape. In 1996, the victim was "confronted" about the rape after defendant was arrested for or suspected of molesting his daughter.
Relator made no attempt to introduce any evidence at the hearing or offer any factual allegations about how he has been actually prejudiced by the delay. His allegations *561 in the writ application speculate that he "may not have any significant memory of that period of his life," that he "may not remember who would or would not be a good witness on his behalf," that the "[victim] has almost no memory of the events," and that his attorney would not be able to test the victim's memory as to the surrounding events, such as clothing worn, time of day, exact location, presence of others, health or emotional problems, medication, weather, and other facts relator thinks will impact on the victim's credibility.
There is no indication that any of relator's concerns have materialized. Relator does not allege specific, actual prejudice, but merely alleges general prejudice in preparation of the defense. General allegations of prejudice in the preparation of the defense and allegations of "potential" prejudice are insufficient to support a due process violation based on preaccusation delay. See Marion, 92 S.Ct. at 466; Hughes, 94-1364 at p. 6, 648 So.2d at 493. Thus, regardless of the state's reasons for delaying the institution of prosecution in this case, relator has failed to meet his burden of establishing prejudice from the delay.
Relator's first argument in his brief for this assignment of error addresses the delay that has occurred after the indictment in bringing the case to trial. Relator claims the indictment should be quashed because the three-year time limit for bringing a capital case to trial, provided by La.Code Crim. P. art. 578, expired when the state failed to bring the case to trial by December 10, 2000. This issue was not contained in the motion to quash or in the original writ application; and there is no indication relator presented the issue to the trial court. As a result, relator has not preserved the issue for review by this court.
Accordingly, we find no merit in relator's first assignment of error.
Assignment of error number 2, Prescription: In the "motion to quash indictment because of running of statute of limitations," relator argued that, because the death penalty for the aggravated rape statute in effect on the date of the offense had been declared unconstitutional, the offense was not a capital offense and, thus, the unlimited prescriptive period of La. Code Crim. P. art. 571 for instituting prosecution in capital cases did not apply. Relator further argued that the proper prescriptive period was article 572, under which the state had only six years from the date of the offense in which to file the indictment. The district court denied the motion.
In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the U.S. Supreme Court reviewed a murder and two rape cases and held that the imposition and carrying out of the death penalty in those three cases constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. This decision led to a hiatus in death penalty adjudications. At the time of the offense in the instant case, the statutory penalty for aggravated rape in Louisiana was still death. See La. R.S. 14:42 (as amended by 1975 La. Acts No. 612, § 1). However, prior to the time of the instant alleged offense, on July 6, 1976, in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the U.S. Supreme Court determined that imposition and carrying out of the death penalty for an aggravated rape conviction in Louisiana constituted cruel and unusual punishment. In response to Furman and Selman, in 1977, the Louisiana aggravated rape statute was amended to provide that the penalty would be "life imprisonment without *562 benefit of parole, probation or suspension of sentence." 1977 La. Acts No. 343, § 1. This amendment went into effect after the date of the instant offense in this case. In 1984, the legislature again amended the law to provide no limitation on a crime for which the punishment may be life imprisonment. Although the crime of aggravated rape was still a capital crime under the Louisiana Statutes at the time of the instant offense, the death penalty could not be imposed because of the U.S. Supreme Court decisions. See State v. Hunter, 306 So.2d 710, 711 (La.1975). The Louisiana Supreme Court has determined that the appropriate sentence, for those crimes that have an unconstitutional sentence of death, is the most severe constitutional penalty established by the legislature for a lesser included offense at the time the crime was committed. State v. Watts, 340 So.2d 261, 262 (La.1976) (per curiam).
When the Louisiana Supreme Court addressed procedural issues in capital cases in the 1970's, it determined that the procedural rules mandated for crimes classified "capital" would continue to be applied, even though the death penalty was not a possibility. See Hunter, 306 So.2d at 711. The Supreme Court reasoned that, because it was the U.S. Supreme Court and not the Louisiana legislature that decided imposition of the death penalty was unconstitutional, only those Louisiana statutes having to do with the imposition and execution of a death sentence were affected. State v. Holmes, 263 La. 685, 269 So.2d 207, 209 (1972). At the time of the instant offense, there was no time limitation in the statutes upon the institution of prosecution for any crime for which the death penalty may be imposed. La.Code Crim. P. art. 571. In Holmes, the court listed article 571 as being one of the procedural rules applicable in Louisiana capital cases.
In State v. Fraise, 350 So.2d 154 (La. 1977), the defendant was convicted of aggravated rape and sentenced to death. The crime occurred in 1971, and the indictment was issued in 1974. On appeal, the Supreme Court recognized that the death penalty was an unconstitutional sentence under Selman. In an assignment of error, the defendant argued he was denied his constitutional right to a speedy trial. Before addressing the constitutional issue, the court noted that the offense was a capital crime and, thus, there was no statutory limitation on the institution of prosecution. 350 So.2d at 156.
Accordingly, although the death penalty may not be imposed in the instant case, article 571 still applies and there is no prescriptive period for the aggravated rape charge. Because the unlimited prescriptive period for capital cases applies, the court did not err when it denied the "motion to quash indictment because of running of statute of limitations."
Relator takes the position that since the death penalty had been declared unconstitutional for this crime, it was not a capital crime at the time of the offense, and, accordingly, was a crime for which life imprisonment was the prescribed penalty. Therefore, he says that La.C.Cr.P. art. 572 applied, which provides that an indictment must be brought within six years of the date of the offense.
Prior to the United States Supreme Court action, the crime of aggravated rape was classed as a capital crime. There was no time limit on institution of prosecution. At the time of this alleged offense, there was nothing in the Louisiana Statutes which limited the time of institution of prosecution. In 1977, the Legislature passed a law that defined this type of crime as one in which life imprisonment was applicable. Nothing was said specifically about when prosecution could be instituted. *563 However, in 1984, the Legislature amended La.C.Cr.P. Art. 571 to state that there is no limitation upon the institution of prosecution for any crime for which the punishment may be life imprisonment or for the crime of forcible rape.
No legislative action from the 1970's to today has ever indicated that the will of the legislature was to ever change the rule that there was no time limitation upon the institution of prosecution on an offense such as the one alleged in this case.
There was some expression at oral argument questioning the fairness of returning an indictment in the 1990's for an offense committed in the 1970's. However, this is not a matter for the courts to decide. As long as it is within constitutional bounds, it is a legislative decision as to the time limits. Indictments for murders committed many years ago are currently being brought in several jurisdictions. We cannot say that as a matter of constitutional law, having no time limit on an indictment for aggravated rape is unconstitutional.
Assignment of error number 3, Medical records: In the "motion to discover and obtain evidence relative to hypnotically enhanced, refreshed and/or induced testimony," relator sought certain medical records of the victim in an effort to determine the circumstances under which the victim was hypnotized and the extent to which the hypnosis enhanced, refreshed, or induced the recollection and testimony of the victim. In particular, relator asked for copies of tapes and notes of any hypnotic sessions in which the victim discussed the offense; tapes and notes of any counseling or other sessions that occurred prior to any hypnosis sessions; tapes and notes of any counseling or other sessions that occurred after any hypnosis sessions; all written statements made by the victim that discuss the offense; the résumé for the victim's therapist, regarding counseling, hypnosis, and therapy; and all materials relied on by the therapist in practicing, learning or becoming certified in hypnotism, hypno-therapy or hypnosis.
Relator alleges he became aware that the victim had been hypnotized when she testified at a bond reduction hearing in December 1999. At that hearing, the victim testified that she had been able to narrow down the date of the rape to November 1976, but was not able to narrow down the date any further. Defense counsel reminded the witness that earlier she had not been able to give the prosecutor anything other than a two-year time period. When asked how she was now able to remember the month of the incident, the victim replied, "I have been in counseling now for a year trying to help myself because I never addressed this."
Counsel asked if the victim had been hypnotized, and the state objected. The court then asked the victim questions about the hypnosis. The victim said she recalled what happened before she started the therapy sessions in January of that year. She also said she had never forgotten her vivid memories of the rape. She referred to relator having molested her before the rape, and she said she understood that molestation charges (insofar as she was the victim) could not be brought because of timeliness problems.
After the victim's testimony at the December hearing, relator filed the motion at issue in this assignment. At a hearing on the motion, defense counsel said he had subpoenaed the victim, the therapist, and a police officer for the hearing, and he implied that he wanted to present their testimony to establish his right to review the medical records. After hearing the argument of counsel, the court determined it would not allow the defense to present *564 the testimony of the witnesses at the hearing. The court refused relator's request to proffer the questions he hoped to ask those witnesses. The court also determined that the hypnosis was part of the victim's treatment and should be considered private and confidential. The court agreed to conduct an in camera inspection to determine if the records of the therapist contained any information that could be used to impeach the victim's credibility.
At a subsequent hearing, the court indicated it had reviewed in chambers the medical records of the victim. These records detail the victim's treatment by a social worker. The court determined there was no Brady evidence in the documents and the records were privileged. The court said it reviewed the records carefully and could not tell if the therapist had actually performed hypnosis. The court filed the medical records under seal and mentioned that the state had not viewed the records.
In this writ, relator argues that he should be allowed to review the medical records because "[t]he credentials of the hypnotist, her relationship to the alleged victim, when, where, and how the hypnosis was conducted are all relevant and potentially ripe with Brady material." Relator does not complain about the court's refusal to allow him to introduce testimony in support of his request for the records, and he does not complain about the court's refusal to allow him to at least proffer the questions he intended to ask the witnesses. At one of the hearings, defense counsel stated that he decided not to seek review of the court's refusal to allow him to proffer such evidence at the hearing.
La.Code Evid. art. 510(C)(1) provides that, in a criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication made for the purpose of advice, diagnosis, or treatment of his health condition between or among himself, his representative, and his physician or psychotherapist and their representatives. "Psychotherapist" is defined as including a licensed social worker. La. Code Evid. art. 510(A)(4)(c). The privilege does not apply in a criminal case if the communication "is relevant to an investigation of or prosecution for child abuse, elder abuse, or the abuse of disabled or incompetent persons." La.Code Evid. art. 510(C)(2)(f). See also La. R.S. 14:403(B).
Relator argues that the exception provided by article 510(C)(2)(f) entitles him to see the victim's medical records. However, the language of this exception does not apply as relator is not seeking the records for the purpose of the "investigation of or prosecution for child abuse." The criminal cases in which this exception has been applied have been cases in which the defendant was the patient and was the party claiming the privilege. See State v. Shirah, 97-384, pp. 8-9 (La.App. 3d Cir.10/8/97), 702 So.2d 825, 830; State v. Fanguy, 94-143, pp. 4-5 (La.App. 3d Cir.10/5/94), 643 So.2d 860, 864-65, writ denied, 94-2726 (La.4/21/95), 653 So.2d 563.
For these reasons, we find no error in the court's determination that the records are privileged under La.Code Evid. art. 510(C)(1). Although the records are privileged, relator is entitled to receive information about the hypnosis to preserve his right to cross-examination, as will be discussed in connection with assignment number 4.
Assignment of error number 4, Hypnotically enhanced testimony: In the "motion to exclude hypnotically enhanced, refreshed or induced testimony" and "motion to challenge hypnotically refreshed testimony and, thereafter, to exclude *565 same," relator argued the victim's testimony should be excluded at trial because the hypnosis sessions of the victim were conducted without the safeguards required by State v. Holden, 554 So.2d 121, 126 (La.App. 2d Cir.1989).[1]
After reviewing the medical records, the court said it did not find any information on the methodology used by the counselor in the hypnotic therapy or any indication that the counselor actually performed hypnosis. The court also said it understood the state was not going to introduce any information secured solely because of hypnosis. The court denied the motion to exclude the testimony, but mentioned that the defense might renew the motion at trial.
The Louisiana Supreme Court has determined that the testimony of a witness who has had his memory refreshed through hypnosis should be treated as other "recollection refreshed" testimony. The hypnosis affects the credibility, and not the admissibility, of the evidence. State v. Broadway, 96-2659, p. 12 (La.10/19/99), 753 So.2d 801, 811, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000); State v. Wren, 425 So.2d 756, 759 (La.1983). See Rock v. Arkansas, 483 U.S. 44, 58 n. 16, 107 S.Ct. 2704, 2712 n. 16, 97 L.Ed.2d 37 (1987).
In Broadway, the surviving victim was hypnotized by a police officer trained in the procedure. Before, during, and after the hypnosis, the police questioned the victim about her description of the attacker. The trial court denied the defense motion to produce the videotape of the hypnosis session. On review, the Supreme Court said the trial court's ruling "precluded the defense from thoroughly cross-examining the victim about her description and the hypnotist (a police officer) about the method he employed." 96-2659 at p. 13, 753 So.2d at 812. However, the court found no prejudice in the ruling because the victim's description varied only slightly after hypnosis and because the officer could not have prompted the victim to describe the defendant (because the defendant was not yet identified as a suspect at the time of the hypnosis).
In reviewing the trial court's denial of the motion to produce, the Supreme Court noted that it previously had commented on the precautions law enforcement officers and prosecutors should take when using hypnosis:
[L]aw enforcement officers and prosecutors should, at the least, be prepared to demonstrate the content and degree of the witness' recall before hypnosis. Obviously, a written or otherwise recorded statement (in as great detail as possible) should be taken. Second, the hypnotic session itself should be recorded so that there is no question as to the events recalled or the manner in which the hypnotic session was conducted. Third, the hypnosis should be conducted by a qualified (and preferably independent) hypnotist.
Broadway, 96-2659 at p. 13, 753 So.2d at 812 (quoting State v. Goutro, 444 So.2d 615, 618 (La.1984) (Lemmon, J., concurring, emphasis in original)). These precautions are not as detailed as those adopted by the Second Circuit in Holden, the case on which relator relies. In *566 Holden, the appellate court summarized procedural guidelines applicable to the admission of a defendant's hypnotically refreshed testimony.
In Wren, the witness provided detailed descriptions of the perpetrators and identified them from a photographic lineup before being subjected to hypnosis by a law enforcement officer. The hypnosis did not produce any facts which had not been previously elicited from the witness, and the Supreme Court found no error in the trial court's pretrial ruling that denied the defense motion to suppress the testimony of the witness at the trial. In Goutro, a witness to the sexual abuse of a child provided a detailed recollection of events and identified the perpetrator (who lived with her) before being hypnotized by a police officer. She did not produce any additional facts while under hypnosis, but was able to clarify dates and times of events. The Supreme Court ruled that the trial court properly allowed the witness to testify at the trial. The Court emphasized that the case did not involve the issue of hypnotically-induced testimony and there was no danger of "confabulation" or "undue suggestion." The sole object of the hypnosis was to clarify the time sequence of the events, not to probe the witness's memory on questions of identity or questions of the nature of the sexual abuse of the child. 444 So.2d at 617.
If, as in Wren and Goutro, the instant case does not involve significant prejudicial evidence that was induced by the hypnosis, then the victim's testimony is admissible, despite the hypnosis. We also note that the hypnosis in this case apparently was not conducted by the state in an effort to advance the case or to assist the victim in recalling details about the offense, but instead was conducted by a private therapist as part of the victim's treatment for anxiety. After reviewing the medical records, the trial court found no indication of hypnosis. However, in reviewing those same records this court found at least one instance (on April 22, 1999) in which the victim received hypnotherapy. Under these circumstances, the trial court's ruling was based on a mistake of fact and we find it appropriate to remand for the trial court to reconsider its ruling regarding the admissibility of the victim's testimony. On remand, the trial court should hold an evidentiary hearing at which time the defense will be allowed to question the victim's therapist about the following: whether or not the therapist hypnotized the victim and, if so, on what occasions; the purpose of the hypnosis; the circumstances surrounding the hypnosis; whether, as a result of the hypnosis, the victim revealed any facts about the offense that had not already been revealed and, if so, what those new facts were; and the therapist's qualifications as a hypnotist.
In all other respects, relator's writ application is denied.
WRIT GRANTED IN PART AND DENIED IN PART. REMANDED FOR HEARING.
DOWNING, J., dissents in part, concurs in part and assigns reasons.
FITZSIMMONS, J., concurs and assigns reasons.
DOWNING, J. dissents in part, concurs in part and assigns reasons.
I concur in the remand. I am of the opinion that the motion to quash should have been granted on due process grounds and dissent from that portion of the opinion.
Where there is no corroborating evidence of a crime, a passage of time of such length that an accused is prevented from preparing a defense should be sufficient grounds to hold that due process is violated. Who among us can account for what *567 they did on an unspecified day in November 1976? When someone truly believes a memory that is false there is no way for a trier of fact to distinguish the truth by the demeanor of the witness. How can we know if a memory is true? According to the False Memory Syndrome Foundation: "The professional organizations agree: the only way to distinguish between true and false memories is by external corroboration." www.fmsfonline.org.
During the 1980's criminal prosecutions based on "repressed memories" sent many an innocent person to jail for crimes alleged to have been committed decades before the victim "remembered" the abuse. "A Claim for Third Party Standing in Malpractice Cases Involving Repressed Memory Syndrome," 37 Wm. & Mary L.Rev. 337. Sadly our court system did not learn the lesson of the Salem Witch Trials. Numerous studies show that when children are exposed to forms of suggestion the error rates can be as high as 50%. "The Suggestibility of Children: Scientific Research and Legal Implications," 86 Cornell L.Rev. 33, p. 54.
In this case there is no corpus delicti. There is no evidence other than the victim's testimony that a crime occurred. Too much time has passed to institute prosecution; a delay of this length is a violation of due process under these facts.
Although State v. Broadway holds that a witness who has had his memory refreshed through hypnosis should be treated as other "recollection refreshed" testimony the holding is based upon a false assumption that there is some reliability to hypnosis. I am unable to find any Louisiana case where hypnosis has been found to be scientifically reliable. People believe hypnosis works when recent studies show that it actually creates false memories. See "Hypnosis May Give False Confidence in Inaccurate Memories," Ohio State Research News, www.osu.edu/researchnews/archive/hypnomem.htm, "Hypnotic Misrecall," Science Frontiers Online, No. 40: Jul-Aug 1985, www.science-frontiers.com/sf040/sf040p19.htm and "Remembering Dangerously," Skeptical Inquirer Magazine, March/April 1995, www.csicop.org/si/9503/memory.html. The trial court should perform a gate keeping function as required by DAUBERT and ascertain if hypnosis is solid science that is not susceptible to suggestion before allowing such evidence to be introduced.
FITZSIMMONS, Judge, concurring in the result, with reasons.
I respectfully concur in the result reached. The medical records reveal a single hypnotherapy session that occurred over three months after weekly sessions with a clinical social worker had commenced on January 6, 1999. Ms. Carpenter had already communicated many details of the alleged rape in the bathroom to the social worker, including the fact that she was twelve years old at the time that the alleged rape occurred. It is suggested that the parameters of the directives of this court's remand should be enlarged to encompass any and all persons who hypnotized the victim after November 1976.
NOTES
[1] Relator also mentions that the trial court has not analyzed the hypnosis to determine if hypnotically induced testimony has gained "general acceptance" in the scientific community. But see Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116, 1123 (La. 1993). Such an argument presents nothing for this court to review, as there is no indication relator presented this issue to the trial court.