GASKINS (Ad Hoc ), J.
*1222 Before the court is the appeal of defendant Michael Kurz. After a jury trial, he was convicted of aggravated rape and sentenced to life in prison without parole. On appeal, Kurz urges five assignments of error: (1) the evidence was insufficient to support his conviction; (2) the procedures for a capital trial were required to be, but were not, followed; (3) the trial judge committed an abuse of discretion in allowing five prosecution witnesses to testify pursuant to La. C.E. art. 412.2 (collectively, the " article 412.2 witnesses"); (4) the sentence imposed is illegal; and (5) time limitations barred the prosecution. For the reasons stated herein, we affirm the conviction but amend Kurz's sentence to 50 years of incarceration at hard labor.
FACTS AND PROCEDURAL HISTORY
Kurz was born August 25, 1952. He was indicted by grand jury for the aggravated rape of the male victim,[1] who was born on July 7, 1965, and who testified that he was under the age of 12 at the time of the rapes. The indictment alleges that Kurz committed the rapes between July 7, 1975, and July 7, 1977, when the victim was 10 or 11 years old, and the defendant was approximately 23 or 24 years old. The original indictment was returned August 20, 2014; the amended indictment was returned that same day, but was not filed until May 9, 2016. At trial, Kurz was 64 years old and the victim was 51 years old.
In December 2016, this matter went to trial. The state presented the testimony of the victim and five other male witnesses who claimed to have been sexually victimized by Kurz. The state also presented the testimony of James Moore, the detective to whom the victim initially reported the rapes, as well as Shelly Anderson, the forensic computer expert who testified that she found child pornography on Kurz's computer.
Victim's testimony
The victim was born on July 7, 1965. Kurz is related to the victim and 12 years his senior.[2] The victim identified Kurz at trial. He remembers seeing Kurz at family gatherings at his parents' and grandmother's houses. These are his earliest memories of Kurz. The victim was four years old when Kurz touched his genital area (over his clothes) for the first time, in a bedroom at the victim's grandmother's house. Kurz continued this type of fondling over the years, mostly at family gatherings at the victim's grandmother's or his parents' houses. At some point, Kurz began fondling the victim's genitalia under his clothing; from there, Kurz escalated to performing oral sex on him. When the victim was older, Kurz had the victim perform oral sex on him. During this time frame, Kurz initially lived with the victim's grandmother, but eventually moved to a trailer several miles away on Linda Lane.
At the Linda Lane trailer, Kurz anally penetrated the victim approximately a dozen *1223 times, beginning when the victim was 11 years old. The victim reiterated that he was 11 years old when the anal penetration began, and remembered this by two markers: he was in elementary school at the time, and it was "at least a year to a year and half... prior to Elvis's death, which was in '77."
It was not until the late 1980s that the victim initially revealed what Kurz had done to him. He first told his parents, and did not seek counseling or otherwise discuss it with anyone else. When asked how he tried to cope with Kurz raping and sexually abusing him, he testified:
I pushed it down as far as I could in the back of my mind. It was always there, but it was not a constant thought at that time like it was before when I was younger. I just tried to bury it as deep as I could.
The victim maintained his silence from the late 1980s until 2014, when he learned that Kurz had been arrested for sexual involvement with an underage male. This spurred him to "come forward because this had to stop. This couldn't go on with any other kids. This could not happen again." The victim contacted the Caddo Sheriff's Office, and eventually gave a recorded Skype interview to Detective Moore.[3]
On cross-examination, the defense attempted to use the Skype interview to discredit the victim's testimony that he was 11 years old when Kurz began anally raping him.[4] The victim said he did not recall telling Detective Moore in the interview that he did not remember how old he was when Kurz anally raped him. Then defense counsel played the portion of the recording of the Skype interview, starting at approximately 8'54? into the interview and ending at approximately 9'36?. Referring to the anal penetration, Detective Moore asked, "Do you remember how old you were, about?" The victim responded, "I don't." Detective Moore then asked if he remembered being "definitely under a certain age when that happened?" The victim answered, "I was under 14 for sure."[5]
After the Skype interview, the victim, in an effort to remember more details, "relived" Kurz's rape and abuse of him "a million times." He explained that it was during the approximate 2½ years between the Skype interview and the trial that he recalled that, at the time the anal rape began, he was in elementary school. Also during that time, he remembered it beginning at least a year to a year and a half prior to the death of Elvis Presley.
On cross-examination, the victim explained that he continued to spend time with Kurz despite Kurz anally raping him because he trusted Kurz as a close family member. Additionally, Kurz took the victim fishing, let him shoot guns, and helped work on the victim's car.
The victim admitted that he did not remember ever having blood in his underwear from Kurz anally penetrating him. He also admitted that his mother washed his underwear at that time, and that he did not think she ever noticed any blood in his underwear.
The victim also admitted that, prior to disclosing the matter to his parents in the *1224 late 1980s, they had asked him whether he had sexual contact with Kurz, and he denied it at that time.
APPLICABLE LAW
During the date range alleged in the indictment, aggravated rape was defined, in relevant part:
Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
...
(3) Where the victim is under the age of 12 years. Lack of knowledge of the victim's age shall not be a defense [.]
La. R.S. 14:42 (as amended by 1975 La. Acts No. 612 § 1); State v. Carter , 2014-926 (La. App. 3 Cir. 4/1/15), 160 So.3d 647, 651-52.
During the time Kurz raped the victim, La. R.S. 14:42 provided a mandatory death penalty. See, e.g., State v. Selman, 300 So.2d 467 (La. 1974). However, on July 6, 1976, the U.S. Supreme Court abrogated the mandatory death penalty provision of La. R.S. 14:42 as cruel and unusual punishment. Selman v. Louisiana , 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed. 2d 1212 (1976). On remand, the Louisiana Supreme Court held that "the appropriate sentence to be imposed upon a valid conviction for aggravated rape is the most severe constitutional penalty established by the legislature for a lesser included offense at the time the crime was committed," i.e. , attempted aggravated rape. State v. Selman, 340 So.2d 260 (La. 1976).
At all relevant times, La. R.S. 14:27 defined the crime of "attempt" and prescribed penalties therefor. However, on September 12, 1975, the maximum penalty for attempted aggravated rape changed from 20 to 50 years of incarceration at hard labor. La. R.S. 14:27(D)(1), as amended by Acts 1975, No. 132, § 1.
DISCUSSION
Sufficiency of the evidence
When the defendant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [proven] beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Lynch, 436 So.2d 567 (La. 1983). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State in Interest of D.R. , 50,594 (La. App. 2 Cir. 2/24/16), 188 So.3d 1116, 1120. Furthermore, the appellate court does not assess the credibility of witnesses or reweigh evidence. Id. ; State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court must accord great deference to the fact-finder's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 09-0725 (La. 12/11/09), 23 So.3d 913.
One witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion, provided it does not bear internal contradiction or irreconcilably conflict with physical evidence. State in Interest of D.R. at 1120.
Kurz makes two arguments regarding the sufficiency of the evidence. First, in his pro se brief, he claims that the state failed to prove that he anally penetrated the victim. However, the victim unequivocally testified that Kurz did anally penetrate *1225 him; there was no internal contradiction or conflicting physical evidence on this point. The fact that the victim did not see any blood in his underwear as a result of the anal penetration constitutes neither an internal contradiction nor conflicting physical evidence. This assignment of error lacks merit.
Second, through counsel and in his pro se brief, Kurz argues that the state failed to prove that he anally penetrated the victim prior to the victim's 12th birthday. In particular, Kurz argues that the victim's initial statement to Sgt. Moore contradicted the victim's trial testimony. In the recorded interview with Sgt. Moore, the victim initially stated that he could not recall exactly how old he was at the time of the anal penetration, but he was 10, 11, 12, or something like that, and definitely under the age of 14. At trial, the victim testified that he was sure that he was 11 years old at the time of the anal penetration, because in the 2½ years since the initial interview, he had been trying to recall as many details as possible, and thus now recalled that he was still in elementary school, at least a year before Elvis Presley died. There is no internal contradiction in the victim's testimony regarding his being age 11 at the time of (at least one of) the rapes, and his testimony does not conflict with physical evidence. Accordingly, the victim's testimony was sufficient to prove that he was age 11 when Kurz raped him.
Admission of five article 412.2 witnesses
Kurz argues that the trial court abused its discretion in admitting five article 412.2 witnesses. The thrust of his argument is that five witnesses, each accusing Kurz of molesting him as a juvenile, is too great a burden for the defense, and created an undue risk of luring the jury into deciding the case on grounds other than proof of the offense charged.
In relevant part, La. C.E. art. 412.2 states:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Article 412.2, supra , was added to the Louisiana Code of Evidence in 2001, and was amended in 2004.[6]
In turn, La. C.E. art. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." The defendant bears the burden of proving that he was unfairly prejudiced by the admission of evidence of other crimes, wrongs, or acts, i.e. , that the evidence should be (have been) excluded pursuant to article 403. State v. Johnson, 15-528 (La. App. 5 Cir. 12/9/15), 182 So.3d 378, writ denied , 2016-0028 (La. 2/24/17), 216 So.3d 61 ; State v. Vail, 2014-436 (La. App. 3 Cir. 11/5/14), 150 So.3d 576, writ denied , 2014-2553 (La. 8/28/15), 176 So.3d 401 ;
*1226 State v. Jones, 2003-0829 (La. App. 4 Cir. 12/15/04), 891 So.2d 760, writ denied , 2005-0124 (La. 11/28/05), 916 So.2d 140.
A trial court's ruling on the admissibility of evidence of similar crimes, wrongs, or acts in a sex offense case will not be overturned absent an abuse of discretion. State v. Preston , 47, 273 (La. App. 2 Cir. 8/8/12), 103 So.3d 525. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. Spratt, 2013-0158 (La. App. 4 Cir. 11/20/13), 129 So.3d 741, writ denied , 2013-2960 (La. 5/30/14), 140 So.3d 1173.
Furthermore, the "harmless error" rule applies to the erroneous admission of other crimes evidence. State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94. In this context, the proper analysis for harmless error review is "to determine whether the guilty verdict actually rendered at trial was surely unattributable to the erroneous admission of La. C.E. art. 412.2 evidence." State v. Dale , 50, 195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, 537, writ denied , 2015-2291 (La. 4/4/16), 190 So.3d 1203.
In State v. Spratt , supra at 751-2, the defendant was convicted of the aggravated rape and aggravated kidnapping of three individual victims. The trial court allowed five article 412.2 witnesses to testify. Each such witness recounted being raped by the defendant, and each identified him as her rape perpetrator at trial. The Fourth Circuit found no error in admitting as witnesses five prior rape victims of the rape defendant, and noted that this article 412.2 testimony was probative because it showed a "similar modus operandi."
In State v. Jackson, 625 So.2d 146 (La. 1993), the defendant was charged with molesting his 7-year-old and 10-year-old granddaughters-by fondling their breasts and kissing them on the mouth. The court held that the testimony of the defendant's three daughters-that the defendant had kissed them and fondled their breasts when they were between ages 8 and 15-was admissible, even though those events occurred 15 to 24 years before the trial. In doing so, the court reasoned that the granddaughters and daughters were both members of the defendant's family, and were similar ages at the time of the molestations. Id. at 151-2. However, the court excluded testimony that the defendant had raped one daughter, showed his penis to another, and had fondled their vaginas. Because of their more serious nature and dissimilarity from the charged acts, the court found that the article 403 balancing test required exclusion. Id. at 152.
In this case, all of the lewd acts attested to by the article 412.2 witnesses are of lesser seriousness than the offense with which Kurz is charged. Accordingly, Jackson's rationale for excluding some of the article 412.2 testimony is inapplicable here.
We note preliminarily that all of the article 412.2 witnesses are males, and they all identified Kurz at trial.
Testimony of four article 412.2 witnesses related to the victim
Three of the four article 412.2 witnesses who are related to the victim ranged in age from 8 to 13 years old at the time their sexual encounters with Kurz began, which was as early as 1978 and through 1985. These witnesses' experiences with Kurz included reciprocal fondling of genitalia, performance of oral sex on Kurz, and the use of a sex toy on Kurz's penis. One of these witnesses could not recall his age at the time the molestations began, but remembered Kurz physically picking him up and fondling his genitalia, and remembered not knowing this was wrong at the time it happened.
These incidents occurred both in the victims' homes and at Kurz's home, and *1227 the pattern usually began at family gatherings or in the witnesses' homes, with Kurz surreptitiously touching the witness' penis and or having the witness touch his. Additionally, Kurz enticed at least two of them to his residence by offering traditional male recreational activities-e.g. , shooting guns, hunting, or fishing. There he showed at least one of the witnesses pornography, then reached over and manually stimulated the witness to ejaculation. Two of the witnesses performed oral sex on Kurz there. One also reported stimulating Kurz's penis with his hand, and with a sex toy called a "vibrator." One witness reported being around 13 or 14 years old when Kurz stopped molesting him; another stated that he could only remember that he was under 17 when Kurz stopped molesting him.
Testimony of the article 412.2 witness unrelated to the victim
This witness was 15 or 16 years old when he began spending time alone with Kurz at Kurz's residence, approximately three years before the indictment. They started by doing "normal" things together: Kurz taught him to drive and how to work on cars; they also shot guns recreationally. When the witness was 16 years old, Kurz manually stimulated him to the point of ejaculation multiple times, and once tried to insert his penis in the witness's anus, but the witness successfully resisted. However, Kurz was successful in sticking an object in the witness's anus.
When this witness was approximately 19 years old, he wanted to stop having contact with Kurz. However, Kurz continued trying to contact him by email. Eventually, the witness's aunt notified the authorities, and Kurz was arrested. The arrest was publicized in the newspaper, which prompted the victim and the other article 412.2 witnesses to notify the authorities that Kurz had also sexually abused them as children. This is when the investigation culminating in this conviction began.
We hold that the trial court did not abuse its discretion in admitting the testimony of the article 412.2 witnesses. Their testimony clearly proves Kurz's lustful disposition toward children, and demonstrates his pattern of molesting his young family members at their own houses. It shows that Kurz had a pattern of enticing boys to his house by offering them traditional male recreational activities-i.e. , letting them shoot guns, taking them hunting or fishing, letting them drive cars, and teaching them to work on cars. Kurz's aggravated rape of the victim was a part of this pattern. The testimony of the article 412.2 witnesses who are related to the victim shows that Kurz was acting on his lustful disposition toward underage males during the 1970s and into the 1980s, the time frame during which Kurz abused the victim. Their testimony also proves that Kurz had a pattern of victimizing boys in a certain age range, roughly from age 4 to age 17.
The testimony of the article 412.2 witness who is unrelated to the victim shows that Kurz has a lustful disposition toward children and used traditional male recreational activities to lure juvenile boys to his house. This unrelated witness's testimony provides corroboration of Kurz's lustful disposition toward the victim and the other article 412.2 witnesses.
In the charge to the jury, the trial court gave the jury a cautionary instruction regarding the article 412.2 evidence:
When a prior accusation of sexual assault is alluded to during trial, it is incumbent upon the jury to segregate the prior accusation from the instant charges in evidence. Evidence that the defendant was involved in the commission of an offense or act other than the offenses for which he is on trial is to be considered only for a limited purpose. The purpose[s] for which *1228 such evidence may be considered are: whether it demonstrates a disposition towards sexually assaultive behavior, or a lustful disposition toward children. You may consider such evidence for these purposes, but you may not find him guilty of the offense merely because he may have committed another offense or act.
The probative value of the article 412.2 witnesses' collective testimony outweighed any risk of unfair prejudice it imposed on Kurz, especially in light of the above cautionary instruction. Accordingly, this assignment of error lacks merit.
Capital trial procedure
Kurz argues that his trial should have been conducted under capital trial procedure because the aggravated rape statute provided a mandatory death penalty at the time of the crime. (However, as stated above, that death penalty provision was constitutionally invalid). In particular, Kurz asserts that the jury should have been sequestered and should have been instructed that, to reach a verdict, they had to be unanimous. He relies on the so-called "capital classification" jurisprudence, which held that defendants were entitled to the additional safeguards of capital trial procedure if the statute under which they were prosecuted provided for the death penalty-even if that death penalty was constitutionally unenforceable. See , e.g. , State v. Rich , 368 So.2d 1083 (La. 1979) ; State v. Lott , 325 So.2d 576 (La. 1976). These additional procedural safeguards included sequestration of the jury and the requirement of jury unanimity to reach a verdict. Id.
Jury sequestration . In State v. Schrader , 518 So.2d 1024 (La. 1988), the defendant was charged with murder pursuant to La. R.S. 14:30 as it was in effect in 1970, which provided a constitutionally unenforceable death penalty. "Nevertheless," the Supreme Court stated, "this homicide prosecution retained for procedural purposes its 'capital' classification," and "a defendant may take advantage of the 'classification theory' to insist on sequestration under these circumstances," Id. at 1036, 1037. The court, however, went on to limit the effects of this fictitious classification. Specifically, it held that "the jurisprudential presumption of prejudice for 'capital cases' does not apply to a 'capital case' where the defendant never faced the prospect of the death penalty and where counsel failed to press the point in the trial court, or object to the lack of sequestration. In the absence of actual prejudice, this right to sequestration is waived." Id. at 1037.
In State v. Serigne, 2016-1034 (La. 12/6/17), 232 So.3d 1227, the Supreme Court held that, where the defendant was prosecuted pursuant to a statute which provided a constitutionally unenforceable death penalty, the defendant could and did validly waive his right to a jury trial, despite a defendant's inability to do so in a "capital case." The defendants argued that Schrader "should be narrowly construed as applying only to jury sequestration (and not any other procedural protections afforded a capital defendant)." The court rejected that argument, stating, "[i]nstead, we find Schrader more broadly rejected the 'capital classification' jurisprudence." Serigne at 1231.
The purpose of the additional procedural safeguards that the legislature prescribed for capital trials is to protect defendants who are actually facing the possibility of the death penalty. The mere presence of a constitutionally unenforceable death penalty in a statute does not entitle the defendant to the heightened protections of a capital trial. Rather, we hold that a defendant must actually be exposed to the risk of the death penalty in order to be automatically entitled to jury sequestration. Because Kurz was not exposed *1229 to a potential death penalty, he was not entitled to automatic jury sequestration. Accordingly, this assignment of error lacks merit.
Furthermore, even if Kurz was entitled to automatic jury sequestration, this assignment would still be meritless. That is because Kurz: (1) never faced the possibility of the death penalty; (2) failed to request sequestration of the jury, and failed to object to the unsequestered jury; and (3) has not shown any actual prejudice. Schrader at 1037.
Unanimous verdict . The applicable legislation clearly invalidates Kurz's claim that he was entitled to a unanimous verdict despite not having been exposed to the risk of the death penalty. Specifically, La. R.S. 14:42(D)(2)(b) provides that where, as here, the district attorney does not seek a capital verdict, "[t]he provisions of C. Cr. P. art. 782 relative to cases in which punishment is necessarily confinement at hard labor" (i.e., noncapital procedure) "shall apply."[7] In relevant part, La. C. Cr. P. art. 782 provides that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of 12 jurors, 10 of whom must concur to render a verdict."
The legislature made these amendments in 1997, after the instant offense, but that does not matter because the amendments are retroactive. State v. Kinsel, 00-1610 (La. App. 5 Cir. 3/28/01), 83 So.2d 532, writ denied , 2001-1230 (La. 3/28/02), 812 So.2d 641 ; see also , State v. Kaigler, 2010-1839 (La. App. 1 Cir. 6/10/11), 2011 WL 3244803. Accordingly, Kurz was not entitled to a unanimous verdict, and this assignment of error is meritless.
Additionally, the logic of Schrader and Serigne extends to Kurz's argument that he was entitled to a unanimous verdict: if he had that right, he waived it when he waived polling of the jury. Furthermore, because the jury was not polled, he cannot show prejudice resulting from the trial court's instruction that only 10 jurors' concurrence was necessary for a verdict. For these reasons as well, Kurz's argument regarding verdict unanimity lacks merit.
Legality of sentence
The trial court sentenced Kurz to life in prison without parole. Kurz argues that this sentence is illegal because it is based on a retroactive application of the 1977 amendment to La. R.S. 14:42. We agree.
The Louisiana Supreme Court "has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." State v. Sugasti , 2001-3407 (La. 6/21/02), 820 So.2d 518, 520. The convict must be sentenced under sentencing provisions in effect at the time of the commission of the crime. Id.
The amended indictment charged Kurz with one count of aggravated rape, committed between July 7, 1975, and July 6, 1977. The jury convicted on this indictment.
Between 1970 and September 11, 1975, La. R. S. 14:27(D) provided:
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than 20 years.
Acts 1970, No. 471 § 1. On September 12, 1975, that provision was amended by increasing *1230 the maximum period of incarceration to 50 years. Acts 1975, No. 132 § 1.
In 1977, but after July 6 of that year, the legislature amended La. R.S. 14:42 to provide a mandatory life sentence for aggravated rape. Acts 1977, No. 343 § 1. In imposing the life sentence on Kurz, the trial court retroactively applied the 1977 amendment. Because the amendment was substantive, this was error.
Pursuant to Selman, we resentence Kurz to 50 years of imprisonment at hard labor under 14:27(D) as amended September 12, 1975. The victim testified that he was 11 years old when Kurz raped him, and the jury believed this testimony.[8] During that time period, La. R.S. 14:27(D) provided a 50-year maximum sentence for the attempt of a crime punishable by death or by life imprisonment.
Limitations upon institution of prosecution
During the date range charged in the indictment, La. C. Cr. P. art. 571 (" article 571") provided: "There is no time limitation upon the institution for any crime for which the death penalty may be imposed."[9] We acknowledge that, after the mandatory death penalty for aggravated rape was held unconstitutional, article 571 could not strictly apply in this case. However, we reject such a reading of article 571, and hold that it continued to apply to aggravated rape despite the unconstitutionality of the mandatory death penalty prescribed for that crime.
This holding gives the effect to article 571 that our legislature intended and is in accord with jurisprudence. State v. Smith, 2001-1027 (La. App. 1 Cir. 2/15/02), 809 So.2d 556, 561-2, held that article 571 applied to aggravated rape prosecution despite the invalidity of the death penalty the legislature sought to impose on that crime, and State v. Fraise , 350 So.2d 154 (La. 1977), held that despite the unconstitutionality of the mandatory death penalty for aggravated rape, article 571 applied to the crime of aggravated rape.
The legislature clearly manifested its intention that there be no time limit on the institution of prosecution for aggravated rape, by enacting: (1) the mandatory death penalty provision of the aggravated rape statute in effect at the time of the offense; and (2) La. C. Cr. P. art. 571, which affirmatively states that there is no time limitation for instituting prosecution of a crime for which the death penalty is possible. We hold that it is the penalty prescribed by the legislature that determines the applicability or inapplicability of article 571 ; for this purpose, enforceability of that penalty is immaterial. At the time Kurz committed aggravated rape, the legislature prescribed a mandatory death penalty for that crime. Therefore, the aggravated rape statute invoked article 571.
Our holding is rooted in the fundamental principles of time limitations on instituting prosecution for crime. "In the absence of a statute of limitations, the State retains the right to prosecute for crimes indefinitely."[10]
*1231 State v. Ferrie , 243 La. 416, 427, 144 So.2d 380, 384 (1962), rev'd on other grounds , State ex rel. Olivieri v. State , 2000-0172 (La. 2/21/01), 779 So.2d 735. The U.S. Supreme Court's invalidation of the mandatory death penalty in Selman , supra , did not affect the legislature's constitutional authority to set no time limitation on instituting prosecution for aggravated rape. Selman likewise did not constitute a manifestation of the legislature's intent to subject the prosecution of aggravated rape to time limitations. Without such manifestation, it must be held that article 571 continued to apply to crimes for which the legislature had prescribed the death penalty. Accordingly, Kurz's assignment lacks merit.
Finally, we note that article 571 is designed protect the state's interest in the safety and welfare of its citizens; it is quite the opposite of a protection for defendants accused of crimes for which the legislature has prescribed the death penalty. In contrast, capital trial procedures-such as mandatory jury sequestration and unanimity of verdicts-are designed to protect defendants when they are actually exposed to the death penalty. This distinction guides our decision.
CONCLUSION
Kurz's conviction for aggravated rape is affirmed. However, the life sentence imposed by the trial court is illegal. We amend the sentence to 50 years of incarceration at hard labor.
CONVICTION AFFIRMED; SENTENCE AMENDED.

Pursuant to La. R.S. 46:1844(W), we do not disclose the name of the victim or the art. 412.2 witnesses, who were themselves victims.

The victim also testified regarding his familial relationship with four of the five article 412.2 witnesses.

The defense introduced this video recording of the interview as exhibit D-1.

The defense played for the jury a segment of the Skype interview, which started at 8'54? (on the tape) of the interview and ended with the victim saying he was definitely under 14 at the time of the anal rape.

Also, earlier in the interview, Detective Moore made the same inquiry, and the victim responded that he was, 10, 11, 12 or something like that.

Initially, article 412.2 applied to the accused's commission of other "sexual offense[s]"; however, the 2004 amendment removed the phrase "sexual offense[s]," and replaced it with "crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children."

Conversely, if the district attorney does seek the death penalty, the unanimous verdict requirement set forth in article 782 is applicable. La. R.S. 14:42(D)(2)(a).

The intended meaning of this statement in the victim's testimony, judged through common usage, was a reference to the period starting on his 11th birthday and ending the day before his 12th birthday, i.e. , from July 7, 1976, until July 6, 1977. Therefore, Kurz must be sentenced pursuant to the law in effect during that time.

The only amendments to article 571 have been to expand it to include a broader array of crimes among those for which there is no time limitation on prosecution, namely, crimes for which a life sentence may be imposed, forcible rape and second degree rape. Acts 1984, No. 926 § 1; Acts 2001, No. 207, § 1; Acts 2015, No. 184, § 6.

It follows as a corollary that any crime not covered in legislation imposing time limitations on instituting prosecution, is not subject to any time limitation (except what may be implied in the Constitution). In light of this precept, La. C. Cr. P. art. 571 is perhaps redundant.